**ARNALL GOLDEN GREGORY LLP**
Richard T. Collins (Bar No. 166577)
   rich.collins@agg.com
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Phone: (202) 677-4030

**LAW OFFICE OF JOHN W. TOWER**
John W. Tower (Bar No. (Bar No. 106425)
   towerlawsd@gmail.com
2211 Encinitas Blvd., 2nd Floor
Encinitas, California 92024
Telephone: (760) 436-5589
Facsimile:  (760) 479-0570

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEANQUEST, LLC,<br><br>                    Plaintiff,<br>v.<br><br>UMR, Inc. *et al.*<br><br>                    Defendants. | **Case No.: 8:25-cv-02541-JWH-JDEx**<br><br>*Assigned to Hon. John W. Holcomb*<br><br>**JOINT RULE 26(F) REPORT**<br><br>Date:   January 30, 2026<br>Time:   11:00 am<br>Place:   Courtroom 9D<br><br>Complaint Filed:   September 5, 2025 |

**TO THE HONORABLE COURT:**

Plaintiff CleanQuest, LLC ("Plaintiff") and Defendant UMR, Inc. ("Defendant"), respectfully submit this Joint Rule 26(f) Report.

The Parties met and conferred on January 9, 2026, regarding case management and agree on several issues. As to those issues where the Parties have not agreed, they will continue to meet and confer in advance of the January 30, 2026, scheduling and status conferences, and look forward to addressing these matters with the Court later this month.

**1.   STATEMENT OF THE CASE**

*Plaintiff's Statement*

Plaintiff provides independent clinical laboratory testing services primarily for patients undergoing treatment for mental health and substance use disorder ("SUD"). Plaintiff is not contracted with Defendant and is considered an out-of-network ("OON") provider. From July 2024 to August 2025, Plaintiff provided medically necessary, clinical laboratory testing services based on doctor's orders to approximately 55 patients with health insurance plans administered by Defendant. Defendant paid a mere 2.44% of Plaintiff's overall charges, and owes Plaintiff a balance of approximately $2.1M plus interest and attorney's fees on more than 540 claims. Plaintiff's damages continue to accrue as Defendant denies or underpays additional claims.

Lab services allow providers to know what substances a patient may or may not be using and whether or not a patient is taking any medication as prescribed. The labs results allow healthcare providers to make informed treatment decisions and ensure the safety of all patients and their staff. Lab services also serve as an important accountability tool for patients in treatment on their journey to sobriety, and are an essential component of SUD treatment.

Plaintiff alleges[1] that Defendant implemented a "top-down" scheme designed

---

[1] Plaintiff's amended complaint is due February 2, 2026. *See* ECF No. 22.

to reduce spend and increase profits by deliberately pending, underpaying, and denying claims for SUD treatment services and clinical laboratory services provided by OON providers, without regard to the benefits owed to their insureds under Defendant's plans. Defendant accomplished its scheme by implementing billing, reimbursement, and coverage policies and guidelines intended to reduce the amount it pays for OON SUD treatment and clinical laboratory services. Defendant's scheme resulted in absurdly low reimbursement rates and denials of vastly all of Plaintiff's claims. Plaintiffs obtained assignments through which patients assigned to Plaintiffs (1) the rights to payment on their claims; and (2) all rights and causes of action against Defendants in connection with those claims, including violations of the Mental Health Parity and Addiciton Equity Act (MHPAEA) and applicable state law.

Defendant's benefit determinations were influenced by its financial conflicts of interest. Defendant is a fiduciary, meaning it is legally obligated to act solely in the best interest of their health plan members and pay what is owed on a claim under the terms of the applicable plans (*see Stephan v. Unum Life Ins. Co. of America,* 697 F.3d 917, 929 (9th Cir. 2012) (quoting *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 106 (2008)). For those plans that are fully-insured plans, Defendant labors under a "structural" conflict of interest, meaning that the less Defendant pays on the claims, the more money they retain for profits. Similarly, for the self-insured plans, Plaintiff believes that Defendant earned additional fees if they paid less when adjudicating the claims pursuant to the terms of their administrative services agreements with the employer plan sponsors.

Plaintiff brings this action to hold Defendant accountable for wrongfully denying and under-reimbursing Plaintiff's claims and for their breach of the health plans and violations of ERISA and the mental health and substance use disorder parity provisions, enacted as part of the MHPAEA, and the Patient Protection and Affordable Care Act of 2010 ("PPACA") and its core package of essential health benefits that include mental health, substance use disorder, and laboratory services.

Plaintiffs seek relief under the following theories:

- claims for plan benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B);
- breach of implied contract;
- violation of the UCL (Bus. & Prof. Code §§ 17200 *et seq*.); and
- quantum meruit.

Plaintiff is contemplating asserting a claim for violation of MHPAEA and analogous state parity laws including the California Mental Health Parity Act in its amended complaint.[2]

### *Defendant's Statement*

This case involves claims for laboratory toxicology services provided by Plaintiff for approximately 55 patients who participate in health plans insured or administered by Defendant pursuant to the Employee Retirement Income Security Act ("ERISA"). As of the date of this report, Plaintiff has not provided Defendant with any information concerning the members or claims at issue. Defendant anticipates arguing, however, that its determination of those claims—many of which were not covered—was reasonable and correct under the terms of the plans. Plaintiff has not identified the specific plan terms that it contends Defendant breached for each of the 55 patients' claims. Defendant denies that it breached any plan terms or otherwise improperly failed to pay benefits due. Defendant denies that it implemented any sort of "scheme" designed to "reduce spend" and "increase profits" by acting inconsistently with plan terms. Defendant further denies that its benefit decisions were influenced by a conflict of interest.

Because Plaintiff has not yet filed an amended complaint, Defendant does not know the basis for its potential MHPAEA or state parity law claims. However, Defendant denies that it has violated the MHPAEA or any state parity law.

Additionally, if Defendant answers the amended complaint, Defendant anticipates asserting a counterclaim against Plaintiff for failure to collect member

---

[2] *See* California Health & Safety Code §1374.72 and Insurance Code §10144.5.

responsibility amounts, as required under plan terms. Defendant anticipates seeking relief for Plaintiff's fraud, negligent misrepresentation, conversion, intentional interference with contractual relations, violation of Californias Unfair Competition Law, and violation of ERISA.

## 2. Subject Matter Jurisdiction

The Complaint alleges that the majority of the applicable health plans are governed by ERISA, and on that basis, Defendant removed this case from state to federal court. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff has a cause of action for violation of ERISA, 29 U.S.C. §1132(a)(1)(B) and may have a cause of action for violation of MHPAEA. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's remaining state law claims that survive ERISA preemption because they are so related to Plaintiff's ERISA claims that they form part of the same case or controversy under Article III of the United States Constitution.

## 3. Legal Issues

*Plaintiff's Statement*

The principal substantive issue(s) are whether Defendant owes Plaintiff benefits for the clinical laboratory services provided to the Defendant's insureds and if so, in what amount.

There is at least one threshold issue that will affect the scope of discovery and which may require the Court's early attention – whether discovery with respect to the ERISA claims should be limited to administrative records. Plaintiff maintains that discovery should not be so limited given the allegations that this was profits-driven initiative to reduce spending on OON SUD clinical laboratory services and because of the financial conflict of interest under which Defendant operated when adjudicating the insured's claims. The issues related to that threshold question include:

- Whether, with respect to self-funded plans, Defendant has a conflict of interest created by financial incentives to underpay or deny claims—

including, but not limited to, additional money Defendant makes through their administrative services agreements with the plans. *See, e.g.*, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'") (quoting Restatement (Second) of Trusts § 187, Comment d (1959)); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006) ("*Firestone* also makes clear that the existence of a conflict of interest is relevant to how a court conducts abuse of discretion review."); *Tremain v. Bell Industries, Inc.*, 196 F.3d 970, 976 (9th Cir. 1999) ("If []the program participant presents material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary, a rebuttable presumption arises in favor of the participant. The plan then bears the burden of rebutting the presumption by producing evidence to show that the conflict of interest did not affect its decision to deny or terminate benefits. If the plan fails to carry this burden of rebutting the presumption, we review de novo its decision to deny benefits.") (citations and internal quotation marks omitted).

- Whether the plans that are fully insured by Defendant present the classic structural conflict of interest because "the less money the insurer pays out the more money it retains in its own coffers." *Klein v. Northwestern Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1125-26 (S.D. Cal. 2011) (quoting *Abatie*, 458 F.3d at 965-66 ("On the one hand, such an administrator is responsible for administering the plan so that those who deserve benefits receive them. On the other hand, such an administrator has an incentive to pay as little in benefits as possible to plan participants because the less

money the insurer pays out, the more money it retains in its own coffers.")); *see also Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2008) ("[The claims administrator] labors under such a conflict of interest: It both decides who gets benefits and pays for them, so it has a direct financial incentive to deny claims.").

- Whether a "reviewing court using the abuse of discretion standard must evaluate the nature, extent, and effect of the conflict in deciding how skeptically to view the conflicted administrator's decision." *Klein*, 806 F. Supp. 2d at 1126 (citing *Abatie*, 458 F.3d at 968-69).
- Whether and to what extent Plaintiff is entitled to discovery outside the administrative record regarding the existence and extent of Defendant's financial conflicts of interest and the effect of those conflicts.
- Whether Plaintiff is entitled to discovery as to communications and documents concerning Defendant's implementation of billing, coverage, and reimbursement guidelines or other documents that Defendant contends is outside of the administrative record.

As described above, these issues ultimately impact the standard of review analysis that the fact finder must undertake to decide Plaintiff's ERISA claims and state law claims. Along these lines, Plaintiff anticipates pursuing discovery regarding Defendant's internal documents and communications regarding coverage of OON clinical laboratory services, Defendant's correspondence with regulators regarding coverage of OON clinical laboratory services, the Defendant's plans' compliance with applicable parity laws, and Defendant's files from their special investigations unit ("SIU"), which may unveil why Defendant denied the majority of Plaintiff's claims.

### *Defendant's Statement*

Defendant states that it is premature to describe the principal substantive legal issues in this action before Plaintiff's amended complaint and Defendant's response

thereto are due. Defendant cannot know whether it will answer or file a motion in response to Plaintiff's amended complaint until the complaint is filed. Defendant anticipates that a threshold legal issue will be whether ERISA preempts any state law claims that Plaintiff chooses to assert in its amended complaint. To the extent Defendant answers or the amended complaint survives dismissal, Defendant anticipates that the central legal issue in this case will be whether UMR abused its discretion when it processed the laboratory toxicology claims submitted by Plaintiff according to the terms of the underlying ERISA health plans for the 55 patients. UMR denies that it breached any plan terms or otherwise improperly failed to pay benefits due. An additional legal issue may be whether Plaintiff engaged in any abusive or irregular billing practices which would support repayment, refund, reimbursement or offsets for overpaid claims.

**4. Parties, Evidence, etc.**

*Plaintiff's Statement*

***Parties***

The Plaintiff is CleanQuest, LLC ("Plaintiff"), a California limited liability company operating an independent testing laboratory in Orange County, California. Defendant is UMR, Inc. ("Defendant").

***Witnesses***

Plaintiff's potential witnesses include its officers, which include but are not limited to, Algin Kalikud, Christina Smith, Stampp Corbin, Michelle Venges and Kellis Corbin. Plaintiff also intends to call witnesses employed by and/or affiliated with Defendant who are identified through discovery. Plaintiff's witnesses will also include utilization review personnel, billing companies, and third-party medical providers. Plaintiff may identify additional witnesses during the course of discovery that are not presently known to counsel.

***Key Documents***

The key documents on the main issues in the case are:

*Plaintiff's Documents*:

- Correspondence between Plaintiff and Defendant.
- Correspondence between Plaintiff and third-party medical providers related to the claims at issue.
- Intake documents for all patients, including assignment of benefits, verification of benefits, and financial responsibility agreements.
- Administrative records.
- Plaintiff's claim reports.

*Defendant's Documents:*

- The plan documents, and all amendments and riders to same.
- All Administrative Services Agreements, and all amendments and riders to same.
- The Administrative Records.
- Defendant's ESI (and Excel spreadsheet) claims data regarding the OON clinical laboratory services claims at issue, including, but not limited to, patient name, member ID, home plan, host plan, plan sponsor/employer, plan type (*e.g.*, ERISA v. non-ERISA), plan funding source (e.g., self-funded or fully insured), rendering provider, claim submission date, dates of services, level of care rendered, unit count, procedure code, diagnostic code, billing code, revenue code, billed amount, allowed amount, not covered amount, deductible amount, coinsurance amount, copayment amount, paid amount, payment date, denial code, reason not covered, remark code, remark code description, discount amount, network status, payment code, pricing code, claim status, and all fees or money that Defendant received for processing and/or pricing the OON clinical laboratory services claims.
- Defendant's SIU documents and files regarding Plaintiff and the patients at issue.
- Defendant's VOB and preauthorization call recordings regarding the OON

clinical laboratory services claims.

- Defendant's clinical and medical necessity guidelines applied to the OON clinical laboratory services claims.
- Documents evidencing Defendant's AI algorithms used in processing or adjudicating the OON clinical laboratory services claims at issue, including all such AI algorithms used by Defendant in making claim edits or pricing adjustments on the OON clinical laboratory services claims, coverage or medical necessity determinations, and recoupment demands on Plaintiff.
- Defendant's or its vendor's contracts with Plaintiff, including Network and Global Agreements, and single-case or claim agreements, if any.
- Defendant's ESI, Excel spreadsheets, and receipts evidencing the fees they have each received on the OON clinical laboratory services claims at issue.
- Defendant's claim recoupment policies and procedures, including any portions of a recoupment that Defendant receives.
- Documents related to Defendant's financial conflict of interest, including financial incentives and fees received by Defendant in connection with their claim and payment determinations with respect to Plaintiff's claims, and communications regarding the same; financial incentives and bonus programs for Defendant's employees and/or vendors related to claim and payment determinations with respect to Plaintiff's claims, and communications regarding the same; and financial incentives and bonus programs related to Defendant's program integrity reviews.
- Documents related to the adequacy of Defendant's network of SUD treatment providers and clinical laboratories.
- Defendant's internal emails, documents, coverage policies, and correspondence regarding coverage for SUD treatment and related SUD clinical laboratory services during the relevant time period.
- Defendant's internal documents and communications regarding enterprise-

1 wide efforts to reduce spend on SUD treatment and related SUD clinical
2 laboratory services.

- Defendant's correspondence with Congress, the Department of Labor, the California Department of Insurance, the California Department of Managed Health Care and other regulatory agencies regarding Defendants' handling of SUD treatment claims and related SUD clinical laboratory services claims.

*Defendant's Statement*

*Parties*

The Plaintiff is CleanQuest, LLC ("Plaintiff"), a California limited liability company operating an independent testing laboratory in Orange County, California. Defendant is UMR, Inc. ("Defendant"), a Delaware corporation with its principal place of business in Wausau, Wisconsin. It is a direct, 100%-owned subsidiary of United HealthCare Services, Inc., a Minnesota corporation, which is a direct, 100%-owned subsidiary of UnitedHealth Group Incorporated, a Delaware corporation, which is a publicly traded company.

*Witnesses*

UMR is not presently aware of the identities of individuals who may have knowledge regarding the claims at issue in this case but anticipates that witnesses will include Plaintiff's owners, managers, employees, and contractors; all UMR members identified on Plaintiff's listing of claims at issue; and individuals identified in the administrative records corresponding to the disputed claims.

*Key Documents*

Defendant anticipates that the key documents in this matter will include the administrative records corresponding to the disputed claims and Plaintiff's and third-party medical providers' files corresponding to the same. Defendant objects to Plaintiff's broad list of key documents. Defendant asserts that discovery in an ERISA action is typically limited to the administrative records corresponding to the disputed claims. *Kearny v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999); *Steiner*

*v. Hartford Life & Accident Ins.*, 2004 U.S. Dist. LEXIS 20022, *13-15 (N.D. Cal. June 4, 2004). Even conflict discovery must be "narrowly tailored" to "the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Groom v. Standard Ins. Co.*, 492 F. Supp. 2d 1202, 1205 (C.D. Cal. 2007) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006)).

**5. Damages**

*Plaintiff's Statement*

The full extent of Plaintiff's damages are unknown at this time, but will be determined once Plaintiff more information from Defendant through discovery and subject to supplementation as Defendant continues to deny or underpay Plaintiff's claims. Based on the claims data that Plaintiff currently possesses, Defendant owes Plaintiff approximately $2,075,865.00, exclusive of statutory and prejudgment interest, prompt payment penalties, costs, and attorneys' fees, which Plaintiff intends to seek. Plaintiff expects provable damages to include both underpayments and denials of claims as to all claims submitted during the applicable statute of limitations period up through the time of trial.

*Defendant's Statement*

Defendant denies that Plaintiff is entitled to any damages.

**6. Insurance**

*Defendant's Statement*

At this time, Defendant believes that any portion of a possible judgment for which Defendant may be responsible would be funded by Defendant from its assets, not through policies issued by external insurance carriers.

**7. Motions**

There are no pending motions at this time. Defendant anticipates filing a motion to dismiss Plaintiff's amended complaint. In addition, given the similarities between this action and *Cleanquest, LLC v. United Healthcare Insurance Company*, Case

8:23-cv-00148-JWH-JDE, Defendant may bring a motion to consolidate these actions pursuant to Rule 42 of the Federal Rules of Civil Procedure. To the extent that Defendant files a counterclaim, Plaintiff may move to dismiss Defendant's counterclaim.

**8. Manual for Complex Litigation**

The Parties do not believe the procedures of the Manual for Complex Litigation should be utilized for this case.

**9. Status of Discovery**

To date, neither party has propounded discovery.

**10. Discovery Plan**

Defendant intends to seek a stay of discovery, similar to that granted in *Cleanquest, LLC v. United Healthcare Insurance Company*, Case 8:23-cv-00148-JWH-JDE, until the Court rules that Plaintiff's amended complaint survives dismissal. There, the Court stayed discovery until Cleanquest successfully amended its complaint. See id. ECF No. 24 at 8-9. The Court held that a stay was warranted because Cleanquest needed to satisfy Rule 8 before seeking discovery and "can and should" have obtained plan documents "from its own patients or their plan administrators prior to commencing litigation." Id.; see also ECF No. 38 at 6 (same). Defendant's position is that the same is true here.

Plaintiff contends a blanket stay of discovery would be unreasonable and prejudicial, and Plaintiff opposes a stay of any discovery necessary to oppose Defendant's motion to dismiss or to amend the complaint. For example, to the extent Defendant argues that Plaintiff fails to adequately plead facts identifying the material terms of Defendant's health plans but Defendant has not provided Plaintiff with those health plans in compliance with ERISA, then Plaintiff must be entitled to conduct discovery to obtain those health plans and to depose Defendant's Rule 30(b)(6) witness concerning its possession, custody and control of ERISA plan documents, and its policies and procedures for compliance with ERISA's mandates for providing such

documents.

The categories of documents Plaintiff anticipates seeking are identified above in response to Paragraph 4. The Parties anticipate entering into an ESI protocol, although Defendant has not agreed to produce ESI and does not believe that such discovery would be proportionate to the needs of this case, which primarily concerns ERISA claims.

Plaintiff anticipates conducting multiple Rule 30(b)(6) depositions of Defendant's representatives. Plaintiff also anticipates conducting third-party discovery, namely from third-party medical providers, regulatory agencies, and employer plan sponsors. As stated previously, Plaintiff's exact amount of damages will be determined through the course of discovery, which may require amending Plaintiff's initial disclosures.

Defendants position is that once discovery is no longer stayed, the parties will be serving written discovery on each other and anticipate seeking deposition testimony (party and non-party) relevant to the subject matter of this action. The Parties propose that written Initial Disclosures be exchanged, if at all, 14 days after Defendant answers the amended complaint. The Parties otherwise do not propose any limitations or modifications to the discovery rules as set forth in Rule 26(f).

**11. Discovery Cut-off**

Plaintiff proposes a fact discovery cut-off date of February 6, 2027. Defendant proposes the discovery cut off date be set, if at all, 275 days after Defendant answers the amended complaint. The Parties shall endeavor to have all fact discovery motions heard by the discovery cut off date. However, if the Parties have discovery issues that arise at the end of the discovery, they shall have 21 days to file any fact discovery motions. The Parties acknowledge that any scheduling or case management order may need to be amended depending on when the litigation proceeds past the pleading stage and Rule 12 motions.

**12. Expert Discovery**

Plaintiff proposes December 7, 2026, for the initial expert disclosure deadline, February 6, 2027, for the rebuttal expert disclosure deadline, and March 17, 2027, for the close of expert discovery deadline. Defendant proposes that the initial expert witness disclosure be due, if at all, 325 days after Defendant answers the amended complaint; that rebuttal expert witness disclosures be due, if at all, 375 days after Defendant answers; and that the expert discovery cut off be set, if at all, for 425 days after Defendant answers.

**13. Dispositive Motions**

Defendant anticipates bringing a motion to dismiss Plaintiff's amended complaint. Plaintiff believes that certain of Defendant's affirmative defenses may be resolved at the summary judgment stage. Beyond that, the Parties submit that it is premature to identify what issues or claims may be determined on a summary judgment motion or via motions *in limine*.

**14. Settlement/Alternative Dispute Resolution (ADR):**

To date, there have been no substantive settlement discussions. Under Civil Local Rule 16-15, Plaintiff proposes to appear for a settlement proceeding in front of the Magistrate Judge assigned to the case pursuant to ADR Procedure 1. Defendant proposes that private mediation would be the most productive form of alternate dispute resolution in this matter. The Parties agree that at least some discovery is required before meaningful settlement discussions may occur. Plaintiff proposed that any settlement conference before the Magistrate Judge or any potential private mediation to take place by no later than December 11, 2026. Defendant proposes that the deadline to conduct a settlement conference be set, if at all, for 425 days after Defendant answers the amended complaint.

**15. Trial Estimate**

*Plaintiff's Proposed Trial Plan*

- 14 -
JOINT RULE 26(F) REPORT

Plaintiff anticipates this matter to be ready for a bench and jury trial by August 9, 2027, and that it will take 5-7 trial days to try Plaintiff's affirmative claims. It may take longer to try the case if Defendant files counterclaims.

*Defendant's Proposed Trial Plan*

Defendant's position is that under ERISA no jury is permitted relating to any of the claims in this case. Defendant requests that the Court set a trial date 550 days after Defendant's answer to Plaintiff's amended complaint or the resolution of a motion to dismiss the amended complaint.

**16. Trial Counsel**

*Plaintiff's Counsel:*

**ARNALL GOLDEN GREGORY LLP**
Richard T. Collins (Bar No. 166577)

Plaintiff intends on submitting additional *Pro Hac Vice* for additional attorneys at Arnall Golden Gregory LLP to represent Plaintiff at trial and throughout these proceedings.

*Defense Counsel:*

**DORSEY & WHITNEY LLP**
Kent J. Schmidt (Bar No. 195969)
Jaycie Cruz (Bar No. 352494)
Alan J., Iverson (*Pro Hac Vice*)
Nicholas J. Pappas (*Pro Hac Vice*)

**17. Independent Expert or Master**

At this time, the Parties do not believe that appointment of a Special Master or Independent Expert is necessary, given the amounts at issue and scope of the issues. The Parties may change their position on the necessity of a Special Master or Independent Expert depending on the progress of discovery between the parties.

**18. Timetable**

Please see attached Exhibit A.

**19. Amending Pleadings and Adding Parties**

The parties shall comply with Rule 15(a) and, if applicable, Rule 16(b)(4) of the Federal Rules of Civil Procedure, as well as L.R. 15-1 through L.R. 15-3 and L.R. 16-14.

**20. Other Issues**

The Parties will work to prepare a protective order which shall, among other things, protect confidential patient information exchanged during the course of discovery and to work towards creating an ESI Protocol that will govern discovery of ESI, if any.

**21.    Consent to Proceed Before Magistrate Judge**

Counsel for all Parties have discussed whether the Parties consent to have a Magistrate Judge of this Court conduct any and all necessary proceedings and order the entry of judgment in this matter pursuant 28 U.S.C. § 636(c) and General Order 12-01. The Parties do not agree to proceed before a Magistrate Judge.

Respectfully submitted,

Date: January 16, 2026            **ARNALL GOLDEN GREGORY LLP**

By: */s/ Richard T. Collins*
Richard T. Collins
Attorney for Plaintiff

Date: January 16, 2026            **DORSEY & WHITNEY LLP**

By: */s/ Alan J. Iverson*
Kent J. Schmidt
Jaycie Cruz
Alan J., Iverson
Nicholas J. Pappas
Attorneys for Defendant UMR, Inc.

ARNALL GOLDEN GREGORY LLP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE: (202) 677.4030
WWW.AGG.COM

- 16 -
JOINT RULE 26(F) REPORT